UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA B,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED HEALTH GROUP COMPANY, et al.,<br><br>    Motion Pictures. | Case No. 16-cv-01639-JSC<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 43, 44, 45 |

Plaintiff Laura B sues Defendant Motion Picture Industry Health Plan ("Motion Picture" or "MPIHP") for the denial of coverage for Plaintiff's mental health inpatient care. (Dkt. No. 27.) Motion Picture moves for summary judgment arguing Plaintiff failed to exhaust her administrative remedies, the denial decision is reviewable only for an abuse of discretion, and the Court's review is limited to the administrative record. (Dkt. No. 44.) Because the plan documents do not require a second level appeal to Motion Picture to exhaust administrative remedies and Motion Picture has not met its burden to show that abuse of discretion review applies, Motion Picture's motion for summary judgment is DENIED.

## BACKGROUND

### I. Denial of Plaintiff's Benefits Claim.

Plaintiff participated in Motion Picture's employee welfare benefit plan (the "Plan") sponsored by Plaintiff's employer and administered by Optum Health Behavioral Solutions, Inc. ("Optum"). (Second Amended Complaint "SAC" ¶ 5, Dkt. No. 43-2 ¶ 4.) At all relevant times, the Plan was a self-funded. (SAC at 2 ¶ 6.) Plaintiff was diagnosed with and suffers from major depressive order, generalized anxiety disorder, and post-partum depression. (SAC ¶ 8.) On

approximately September 30, 2013, Plaintiff stopped working due to her disability. (SAC ¶ 10.) Between October 28, 2014 through November 3, 2014 and January 7, 2015 through January 20, 2015, Plaintiff was hospitalized and received inpatient mental health treatment at Resnick Neuropsychiatric Hospital at the University of California, Los Angeles. (Dkt No. 43-11 at 100-105.) Plaintiff filed behavior health claims for this treatment, which was approved by Optum. (*Id*. at 90-99.)

Plaintiff sought further inpatient services at Balance Treatment Center on January 16, 2015. (Dkt. No. 43-10 at 167-168.) Optum denied coverage for treatment at Balance, instead authorizing Mental Health Acute Inpatient Unit as an alternate service. (*Id*.) Plaintiff submitted an urgent appeal to Optum on January 21, 2015. (*Id*. at 161.) By letter dated January 22, 2015, Optum wrote to Plaintiff advising that it had completed the appeal review for residential treatment at Balance. (*Id*. at 161-65.) Optum denied benefit coverage for treatment at Balance and instead authorized Mental Health Partial Hospitalization as an alternate service. (*Id*.)

A document entitled "Important Information About Your Right to Request a Second-Level Review of a Non-Coverage Determination" was enclosed with the January 22 Optum denial letter and includes the following two paragraphs:

> Under the terms of your benefit with Motion Picture Industry Pension & Health Plans, you have a right to request a Second-Level appeal review of any decision not to provide you a benefit or pay for an item or service (in whole or in part).
> The decision of the Benefits/Appeals Committee shall be final and binding upon all parties, including the Participants and any person claiming under the Participant, subject to the right to bring a civil action under 502(a) of ERISA.

(Dkt. No. 43-10 at 164-165.) On February 13, 2015, Plaintiff's provider at the Balance Treatment Center, medical director Dr. Ronald D. Sager, submitted a letter to Optum stating that Plaintiff "continues to meet medical necessity for residential care" due to her depression and anxiety. (Dkt. No. 47-1 at 14.) According to Plaintiff this letter was not contained in the initial disclosures or administrative record produced by Motion Picture. (Dkt. No. 47-1 at 2 ¶ 4.)

**II.     The Plan Documents**

    **A.     The Agreement and Declaration of Trust ("Trust Agreement")**

The Trust Agreement under which the Plan operates provides discretionary authority to the

Plan's Directors. Art. IV, Section 1 grants the Directors the power to construe the Trust Agreement. (Dkt. No. 43-4 at 16.) The Directors have full authority to determine the benefits the Plan will provide and final and binding authority to determine claims and appeals. (Dkt. No. 43-5 at 7, 10.) The Trust Agreement also grants the Directors the authority to interpret the plan of benefits. (*Id*. at 11.)

### B. The 2013 Summary Plan Description ("SPD")

The SPD recites the Motion Picture's Board of Directors "full discretion and authority to interpret the Plan and to decide any factual questions related to eligibility for and the extent of benefits provided by the Plan." (Dkt. No. 43-9 at 14.) The SPD includes a section titled: "CLAIMS APPEALS PROCEDURES." Under the subheading "Filing An Appeal with MPIHP," the SPD states: "if you feel that your Claim has not be processed correctly by MPIHP, you have 180 days following the receipt of your Explanation of Benefits or other initial adverse determination to make a formal request for review." (Dkt. No. 43-10 at 70.) Appeals must be addressed to the "Benefits/Appeals Committee" of MPIHP. (*Id*.) Under the same subheading, the SPD states that the Committee's decision "shall be final and binding upon all parties, including the Participants and any person claiming under the Participant, subject to the right to bring a civil action under Section 502(a) of ERISA." (*Id*. at 70.) It goes on to warn that "[t]he failure to file such an appeal within 180 days from your receipt of the initial Adverse Benefit Determination shall constitute a waiver of the right to review the decision." (*Id.*)

Under the same "CLAIMS APPEALS PROCEDURES" section, is a separate subheading entitled "Filing Appeals with MPIHP Contract Providers." There the SPD states that appeals for health care services made through contract providers are "generally handled by the entities themselves, rather than by [Motion Picture]." (*Id.*)

## DISCUSSION

Motion Picture makes three summary judgment arguments: (1) this Court must review the benefits determination for abuse of discretion, (2) Plaintiff failed to exhaust her administrative remedies as the Plan requires; and (3) the Court's review of the benefits decision is limited to the administrative record of Plaintiff's claim. (Dkt. No. 44 at 5.)

## I. Standard of Review

"The default standard for evaluating a claim for benefits under ERISA is de novo." *Wiley v. Cendant Corp. Short Term Disability Plan*, 631 F.Supp.2d 1221, 1224 (N.D. Cal. 2009) (citing *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115 (1989)). However, when an ERISA plan "grants discretionary authority to the plan administrator to determine plan eligibility, the court will ordinarily review a committee's decision to deny benefits for an abuse of discretion." *Bergt v. Retirement Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002) (citing *Firestone,* 489 U.S. at 115). The plan documents must "grant this discretionary authority unambiguously; if the plan fails to do this, the district court must review a committee's decision *de novo.*" *Id.* (citing *Kearney v. Standard Ins. Co.,* 175 F.3d 1084, 1090 (1999)).

### A. California Insurance Code Section 10110.6 Does not Apply

Plaintiff first argues that the Court need not even look at the Plan language because California Insurance Code Section 10110.6 voids insurance provisions that reserve discretionary authority to the insurer or its agent to determine eligibility for benefits or interpret the terms of the policy. Cal. Ins. Code § 10110.6. This argument fails, however, because ERISA preempts state laws that regulate self-funded plans and it is undisputed that "at all relevant times, the Plan was a self-funded plan." (SAC at 2 ¶ 6.)

"ERISA contains one of the broadest preemption clauses ever enacted by Congress." *Evans v. Safeco Life Ins. Co.,* 916 F.2d 1437, 1439 (9th Cir. 1990). Except as provided in 29 U.S.C Section 1144(b), ERISA supersedes "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA's "savings clause" contains an exception: "[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance." *Id.* § 1144(b)(2)(A). However, "[i]n *FMC v. Holliday,* 498 U.S. 52, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990), and *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985), the Supreme Court recognized that ERISA—specifically the interaction of the savings and deemer clauses with the general preemption clause—treats insured plans and self-funded plans differently for preemption purposes." *PM Group Life Ins. Co. v. Western Growers Assur. Trust*, 953 F.2d 543,

4

545 (9th Cir. 1992). "ERISA's 'deemer clause' provides that self-funded ERISA plans may not be deemed to be insurers or insurance companies for purposes of the savings clause." *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life and Health Insurance Company*, 169 F.Supp.3d 1058, 1071 (S.D. Cal. Mar. 11, 2016) (citing *FMC*, 498 U.S. at 61); *see also PM Group*, 953 F.2d at 545-46 (holding that because that the defendants were self-funded plans, ERISA preempted the application of California law to the plans).

Because the Plan was self-funded, it falls under ERISA's deemer clause and may not be considered an insurance company for purposes of the savings clause. *See FMC*, 498 U.S. at 61. As such, ERISA preempts the application of California Insurance Code Section 10110.6 to the Plan. *See Martin v. Aetna Insurance Company,* 223 F.Supp.3d 973, 981-82 (C.D. Cal. 2016). Plaintiff's reliance on *Standard Ins. Co. v. Morrison*, 584 F.3d 837 (9th Cir. 2009) is misplaced as the case does not address the application of the ERISA savings clause to self-funded plans. Although not raised by Plaintiff, the Court notes that the Ninth Circuit recently held in *Orzechowski v. Boeing Co. Non-Union Long-Term Disability Plan*, 856 F.3d 686 (9th Cir. 2017) that Insurance Code section 10110.6 was saved from ERISA preemption by the savings clause. *Orzechowski*, however, did not address *FMC* or the deemer clause which is unsurprising given that the plan appeared to have been funded by an insurance policy rather than being self-funded. *See id.* at 688 (noting that Aetna Life Insurance Company decided to terminate the plaintiff's long-term disability benefits).

In any event, after this Court heard oral argument the Ninth Circuit decided the issue. In *Williby v. Aetna Life Insurance Co.*, the court discussed whether state law applies to a self-funded employee benefit plan. 2017 WL 3482390, *1 (9th Cir. Aug. 15, 2017). The Ninth Circuit held it does not:

> If the state law is applied to a traditional insurance policy, then the state law falls outside the deemer clause and thus within the saving clause—even if the insurance policy backstops an ERISA plan. On the other hand, if the state law is applied to an ERISA plan itself, which is how such laws operate on self-funded plans, the law falls within the deemer clause and thus is preempted, even if it is a bona fide insurance regulation that only incidentally affects ERISA concerns. *See FMC Corp.*, 498 U.S. at 64, 111 S.Ct. 403. The result is a simple, bright-line rule: "if a plan is insured, a State may regulate it indirectly through regulation of its insurer

5

> and its insurer's insurance contracts; if the plan is uninsured, the State may not regulate it." *Id.* The [FMC] Court thus concluded: "We read the deemer clause to exempt self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the saving clause." *Id*. at 61, 111 S.Ct. 403; *see Scharff v. Raytheon Co. Short Term Disability Plan*, 581 F.3d 899, 907 (9th Cir. 2009)("[U]nder ERISA's 'deemer clause,' state insurance regulation of self-funded plans is preempted by ERISA."). Thus, for a self-funded disability plan like Boeing's, the saving clause does not apply, and state insurance regulations operating on such a self-funded plan are preempted.

(*Id*. at \*5-6.) ERISA therefore preempts the application of California Insurance Code section 10110.6 to Motion Picture's self-funded plan.

### B. Motion Picture did not Show That Optum has Discretion to Make Benefits Determinations

Optum—not Motion Picture—made the decision to deny Plaintiff benefits. Motion Picture has not met its burden of showing that abuse of discretion review applies to Optum's decision. *See Prichard v. Metropolitan Life Ins. Co.*, 783 F.3d 1166, 1169 (9th Cir. 2015). Its motion for summary judgment argued only that Motion Picture has discretionary authority to determine eligibility for benefits and did not address whether Motion Picture had properly delegated that authority to Optum. (Dkt. No. 44.) Accordingly, Motion Picture has not met its burden of showing that abuse of discretion review applies.

Its attempt to meet its burden in connection with its reply is too little too late. That Optum and not Motion Picture made the eligibility decision was not something that Motion Picture learned from Plaintiff's opposition; Motion Picture had full knowledge of that fact before it filed its motion for summary judgment. Indeed, it moved for summary judgment on the grounds that Plaintiff failed to exhaust her administrative remedies based on the undisputed fact that Motion Picture was never given the opportunity to decide eligibility for benefits. Its attempt to offer new evidence and argument in its reply, indeed a whole new delegation theory, is improper and will not be considered by the Court on summary judgment. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996).

While the Court could give Plaintiff the opportunity to file a sur-reply to address Defendant's new evidence and argument, given that Plaintiff did not cross-move for summary judgment on the appropriate standard of review, and that the parties' Rule 52 submissions are due

1 in November, the Court concludes that the best approach is to address this question in connection with the Rule 52 briefing. Thus, the question of whether Optum had discretion to decide eligibility for benefits such that abuse of discretion rather than de novo review applies will be decided at the same time as the Court's merits decision.

## II. Administrative Exhaustion

Having realized that Motion Picture did not make the decision to deny Plaintiff benefits, Motion Picture also moved for summary judgment on the grounds that Plaintiff failed to exhaust her mandatory administrative remedies.[1]

"As a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Barboza v. California Association of Professional Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011). "Under ERISA, an employee benefit plan's internal review procedures must be included in the plan's written documents, which include the plan instrument, *see* 29 U.S.C. § 1102(a)(1), and a summary of the plan instrument, called the 'summary plan description.'" *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 627 (9th Cir. 2008) (citing 29 U.S.C. § 1022). "The summary plan description must be 'written in a manner calculated to be understood by the average plan participant,' and must be 'sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.'" *Id.* (citing 29 U.S.C § 1022(a)).

The summary plan description must contain "the remedies available under the plan for the redress of claims which are denied in whole or in part." *Id.* (citing 29 U.S.C. § 1022(b)). "If there is ambiguous language in a plan, ambiguities are construed in favor of the insured." *Wiley v. Cendant Corp. Short Term Disability Plan*, 631 F.Supp.2d 1221, 1224 (citing *Kearney*, 175 F.3d at 1090).

---

[1] Plaintiff argues that exhaustion of administrative remedies must be raised in a 12(b) motion to dismiss rather than summary judgment. However, both of the cases upon which Plaintiff relies were later overruled by *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014). *Albino* applies to ERISA cases. *See Norris v. Mozzola*, 2016 WL 1588345, at *6 (N.D. Cal. Apr. 20, 2016). As the *Albino* court explained, the procedure for resolving exhaustion of remedies questions is a summary judgment motion, "followed, if necessary, by a decision by the court on disputed questions of material fact relevant to exhaustion." 747 F.3d at 1171.

7

Because lack of ERISA exhaustion is an affirmative defense, *see Norris v. Mozzola*, 2016 WL 1588345, at *6 (N.D. Cal. Apr. 20, 2016) (citing cases), "[d]efendants must produce evidence proving failure to exhaust in order to carry their burden." *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the [plaintiff] shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.*

Defendant Motion Picture has not met its burden because nowhere in the Plan documents does it state that a claimant is *required* to make a second level appeal to Motion Picture's Benefits/Appeals committee before bringing an ERISA suit. The SPD states "if you feel that your Claim has not be processed correctly by MPIHP, you have 180 days following the receipt of your Explanation of Benefits or other initial adverse determination to make a formal request for review." This language did not require Plaintiff to file an appeal with the Motion Picture Benefits/Appeals Committee as her claim was not processed by MPIHP in the first instance—it was processed by Optum. And, indeed, in a separate subsection the SPD states that appeals may be handled by contract providers, such as Optum. An average plan participant could conclude from the SPD's plain language that when a benefit is offered through a contract provider it is that contract provider, rather than Motion Picture, that handles the entire appeal process. Indeed, Plaintiff addressed her appeal documents to Optum. Thus, to an average participant whose claim has been denied by a Motion Picture contract provider this language does not require an appeal to the Motion Picture Benefits/Appeals Committee.

The SPD's proclamation that "the decision of Motion Picture's appeals committee shall be final and binding upon all parties, including the Participants and any person claiming under the Participant, subject to the right to bring a civil action under Section 502(a) of ERISA" does not obligate a claimant in Plaintiff's position to file an appeal with the Motion Picture Benefits/Appeals Committee. First, as explained above, it does not address the issue that Plaintiff never had her claim denied by Motion Picture in the first instance and thus that this subsection does not apply at all. Second, the language does not inform a claimant that she is *obligated* to file a secondary appeal directly to the Motion Picture Benefits/Appeals Committee *prior to* filing an ERISA action. The Seventh Circuit's decision in *Gallegos v. Mount Sinai Medical Center*, 210

8

F.3d 803 (7th Cir. 2000) is right on point. There the court held that the claimant was not required to file an appeal where "the only penalty mentioned for failure to submit to administrative review is that the claims decision will become 'final.' There is no indication that this 'finality' may have consequences for the bringing of a suit in federal court, an option which the claimant is also informed she may pursue." *Id*. at 810.

The same is true here. There is nothing in the SPD that suggests that the "finality" of the decision means that a claimant cannot bring suit in court. To the contrary, the language stating that it is final and binding "subject to the right to bring a civil action" suggests that the decision *is* reviewable by a court, not that it is not reviewable. Further, the statement two paragraphs later that failure to file an appeal with the Motion Picture Benefits/Appeals Committee within 180 days "shall constitute wavier of the right to review the decision" also does not advise the average participant that she will lose her right to go to court if she does not file an appeal. Review by whom? The natural reading is that review by the Committee is waived, not review under ERISA by a court. In *Vaught*, in contrast to the language here, the claimant was clearly advised that there were two levels of review and that the claimant had a right to bring a claim in court only after receiving adverse benefit determinations at both levels of review. 546 F.3d at 623.

The letter denying Plaintiff's first level appeal also did not obligate Plaintiff to file an appeal with the Motion Picture Benefits/Appeals Committee. The letter merely states Plaintiff has "a right to" a second appeal. While the Ninth Circuit has not opined on what language conveys mandatory appeal procedures, at least two other circuits have held that the plain meaning of phrases such as "you may have your claim reviewed," "you may appeal," and "if you wish to have the decision reviewed" indicates the ability to participate in a voluntary, rather than mandatory, review procedure. *See Gallegos v. Mount Sinai Medical Center*, 210 F.3d 803, 810 (7th Cir. 2000); *Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203, 1208 (11th Cir. 2003)*; see also Lecates v. Blue Cross Idaho*, 2017 WL 4974950, *7 (D. Idaho Sept. 16, 2016) (concluding the plain meaning of the words "may", "wish", or "should" indicate that a plan participant has the opportunity to participate in a voluntary, rather than mandatory, review procedure). Telling a participant she has "a right to" an appeal is not the same as telling a claimant she must appeal or

9

she loses her right to challenge the decision in court. As the Eleventh Circuit explained in *Watts*:

> The summary plan description tells participants that they "may use" the administrative appeal procedure if their claim is denied and they "wish to appeal" and, on the very next page, states that claimants "may" file a suit in federal court if their claim is denied. In neither place, or anywhere else in the document, does it say that using the administrative appeal procedure is **necessary** before a lawsuit may be filed. By describing without limitation either route as one the participant "may" use to obtain relief from the denial of her claim, the clear implication is that neither is a prerequisite for the other. To attorneys and judges familiar with the law in general and with ERISA law in particular, it may seem obvious that administrative remedies must come before a lawsuit, but to the average plan participant, who by virtue of being an ERISA claimant will sometimes be sick or disabled, there is nothing obvious about it. Instead, it is more likely that a layperson told that she "may" exhaust her administrative remedies and that she "may" file a lawsuit would conclude, as Watts did, that it was an either/or proposition-her option.

*Id*. at 1208 (emphasis added). The same reasoning applies here.

Defendant's reliance on *Noren v. Jefferson Pilot Financial Ins. Co*. 378 Fed.Appx 696 (9th Cir. 2010) is misplaced. There the court concluded that the plan *required* two levels of internal administrative review and "the appeal procedure was fully contained in the plan information." *Id*. at 697-98. *Noren* thus sheds no light on whether *this* Plan, SPD, and denial letter adequately advised an average claimant that she was required to file two appeals or be barred from filing suit. They did not. Defendant's emphasis on Plaintiff's failure to come forward with evidence that she "failed in her duty" to file a second appeal because she misunderstood the appeal process is also unavailing. She does not have to produce such evidence because the Plan documents failed to create such a duty in the first place.

As Defendant has not established that the Plan, SPD or denial letter obligated Plaintiff to file a second level review with the Motion Picture Benefits/Appeals Committee before filing an ERISA lawsuit, Defendant's motion for summary judgment on the grounds that Plaintiff failed to exhaust her administrative remedies is denied.

**III.    Scope of Review**

Defendant argues that since the standard of review is abuse of discretion, the Court may not consider any evidence outside the administrative record. As discussed above, the Court has not yet determined the standard of review. Moreover, evidence outside the administrative record

may be relevant to the standard of review inquiry, and there may be a dispute as to what is in the administrative record. The Court thus denies Defendant's motion to limit the scope of review.

### IV. Plaintiff's Motion for Administrative Relief

Plaintiff moves for administrative relief to postpone any consideration of whether Plaintiff exhausted her administrative remedies and the scope of the administrative record. (Dkt. No. 45.) The Court addressed the issues of exhaustion and scope above therefore Plaintiff's motion is denied.

### VI. Motion to File Under Seal

A party must demonstrate "compelling reasons" to seal judicial records attached to a dispositive motion. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). Parties moving to seal documents must comply with the procedures set forth in Civil Local Rule 79-5. The rule permits sealing only where the parties have "establishe[d] that the document or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law." Civ. L.R. 79-5(b).

Motion Picture argues Exhibit A to the Bonanno declaration, the administrative record of the benefit denial, merits sealing because it contains Plaintiff's identifiable information including claims for medical benefits, home address, and social security number. (Dkt. No. 43-1 at 1.) Motion Picture's attempt to seal Exhibit A in its entirety is improper. Exhibit A contains several documents and hundreds of pages, including Motion Picture's Trust Agreement and SPD, that do not identify Plaintiff's personal information. Accordingly, Motion Picture is ordered to resubmit its motion to file under seal with the appropriate redactions for Plaintiff's identifying information.

**CONCLUSION**

For the reasons outlined above, the Court DENIES Motion Picture's motion for summary judgment, motion to file under seal, and Plaintiff's motion for administrative relief.

This Order disposes of Docket Nos. 43, 44, and 45.

**IT IS SO ORDERED.**

Dated: August 25, 2017

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge